UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America | No. 3:21-CR-00210 (SALM) |
| v. | |
| Saviana Bourne | December 16, 2021 |

**RULING ON MOTION FOR RELEASE PENDING SENTENCING
PURSUANT TO 18 U.S.C. §§ 3143 AND -3145**

The defendant, Saviana Bourne, pled guilty to an information charging her with Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). At her plea hearing, her counsel made an oral motion for release pending sentencing pursuant to 18 U.S.C. §§ 3143 and -3145. (ECF No. 24.) For the following reasons, the defendant's motion is **DENIED** on the current record.

**I.       Background**

In a criminal complaint dated September 16, 2021, the United States charged Ms. Bourne with committing Hobbs Act robbery and related offenses in violation of 18 U.S.C. § 1951. (Compl., ECF No. 1.) She was arrested in Chicopee, Massachusetts the next morning (Arrest Warrant Return, ECF No. 19), and she appeared before the undersigned on the afternoon of September 17, 2021. (ECF No. 6.) At her request, the Court appointed counsel for her. (*Id.*)

The government moved for pre-trial detention pursuant to 18 U.S.C. § 3142. (ECF No. 5.) Both parties preferred that the detention hearing not be held at the initial appearance, however (*see id.* at 6), and accordingly the Court scheduled a hearing for September 21, 2021. *See* 18 U.S.C. § 3142(f) (permitting continuances of up to three days at the government's request, or up to five days at the defendant's request); *U.S. v. Melendez-Carrion*, 790 F.2d 984, 991 (2d Cir. 1986).

When the hearing went forward on that date, Ms. Bourne consented to detention without prejudice, and the Court therefore ordered her detained. (ECF No. 15.)

On November 30, 2021, Ms. Bourne pled guilty to an information alleging one count of conspiracy to commit Hobbs Act robbery, four counts of Hobbs Act robbery, and two counts of attempted Hobbs Act robbery, all in violation of 18 U.S.C. § 1951(a). (ECF No. 20.) She pled guilty pursuant to a plea agreement that the parties memorialized in a twelve-page letter. (ECF No. 26.) That letter included a Stipulation of Offense Conduct and Relevant Conduct, in which Ms. Bourne admitted (among other things) that she:

- Accompanied three individuals to the AT&T store located at 3243 Berlin Turnpike in Newington, Connecticut on January 29, 2021, for the purpose of robbing the store; and that she knew that these three individuals carried weapons and that they intended to use those weapons to complete the robbery;

- Drove the same three individuals to the AT&T store located at 7 Hazard Avenue in Enfield, Connecticut, on February 24, 2021 for the purpose of robbing the store; that she knew that they were armed and intended to use those weapons in the robbery; and that she drove them away from the store after they completed the robbery;

- Drove the same three individuals, along with a fourth co-conspirator, to another AT&T store located at 110 Albany Turnpike in Canton, Connecticut on April 15, 2021, again for the purpose of robbing the store; that she knew that her co-conspirators were armed and that they intended to use their weapons in the robbery; and that she drove them away from the store;

- Drove the four Canton co-conspirators to the AT&T store located at 1919 East Main St. in Torrington, Connecticut on May 15, 2021 for the purpose of committing an armed robbery at that store; when the robbery failed because her co-conspirators could not get past the store's locked door, she drove them away;

- Drove the same four co-conspirators to the AT&T store located at 140 Glastonbury Boulevard in Glastonbury, Connecticut for the purpose of committing an armed robbery there; after the co-conspirators aborted the robbery, the defendant drove them away; and

- Drove the four co-conspirators to the AT&T store at 1018 Riverdale Street in West Springfield, Massachusetts, for the purpose of committing a robbery there and with the knowledge that the co-conspirators were armed and intended to use their weapons in the commission of the robbery; that she drove them away from the

>scene; and that in the course of driving away from the robbery, she engaged police in a high speed chase that ended when the car that she was driving crashed into a Massachusetts State Police cruiser.

(*Id.* at 10-11.)

At the end of the plea hearing, Ms. Bourne's counsel made an oral motion for release pending sentencing pursuant to 18 U.S.C. §§ 3143 and -3145. (ECF No. 24.) He proposed a bond package, the principal elements of which were (a) execution of an appearance bond in the amount of $200,000.00, to be co-signed by Ms. Bourne's parents, and to be secured by her mother's home and by her father's commercial trucks; (b) her parents' agreement to serve at third party custodians; and (c) submission to home detention and location monitoring. Some of these elements had fallen into place only hours before, however, and the Pretrial Services Office had not yet had an opportunity to review the entire proposal. The Court therefore deferred consideration of the motion and scheduled a hearing for December 6, 2021. (ECF No. 25.)

At the December 6th hearing, Ms. Bourne acknowledged (through counsel) that persons in her position must demonstrate "exceptional circumstances" if they wish to be released on conditions while awaiting sentencing. (*See* discussion, Section II *infra*.) Her counsel identified "the unusual strength of the bond package" as an "exceptional circumstance." (FTR Recording, Dec. 6, 2021, at 11:18.) He added that Ms. Bourne had "accepted responsibility," and he cited her "glowing academic . . . credentials," noting that she has a four-year degree from Quinnipiac University, and that she attended the University of New Haven as well. (*Id.* at 11:21.) But he underscored that "[t]he strength of the proposal . . . is the surety." (*Id.* at 11:18.) He observed that Ms. Bourne's mother (and proposed custodian) is a correctional officer who has received extensive training on ensuring compliance with conditions. (*Id.* at 11:19.)

The government did not oppose release, provided that the proposed home detention condition was strengthened to home incarceration. (*Id.* at 11:22.) The Assistant United States

Attorney acknowledged that the "exceptional circumstances" standard is "very high," and that Ms. Bourne had just pled guilty to "very violent Hobbs Act robberies." (*Id.*)  He nonetheless agreed with her counsel that the bond proposal was "unusually strong." (*Id.*)  The government therefore did not oppose Ms. Bourne's release to home incarceration, even though a victim had taken the time to attend the video hearing and submit a letter in opposition. (ECF No. 32-1.)

Although the Court had deferred consideration of the motion for a week while the Pretrial Services Office reviewed the bond proposal, some elements of the proposal still had not been fully vetted by December 6th.  The Court therefore took the motion under advisement while it awaited further input from the Pretrial Services Office. (ECF No. 31.)  Three days later, the presiding District Judge, the Honorable Sarah A.L. Merriam, accepted Ms. Bourne's plea of guilty to all seven counts in the information. (ECF No. 33.)  She also scheduled Ms. Bourne's sentencing for February 22, 2022. (Order, ECF No. 27.)  The Court will now address whether Ms. Bourne should be released on bond or remain detained while she awaits that sentencing hearing.

**II.     Discussion**

"The Bail Reform Act, as amended, sets forth the procedure by which judicial officers determine" whether persons who have pled guilty to federal offenses may be released while they await sentencing. *U.S. v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991).  "The statute distinguishes between two categories of crimes to determine eligibility for release." *Id.*  The first category includes those offenses that are not described in subparagraphs (A), (B), or (C) of 18 U.S.C. § 3142(f)(1); when a defendant is awaiting sentencing on such an offense, she may obtain release if "the judicial officer finds by clear and convincing evidence that [she] is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1).  The second category encompasses the crimes described in 18 U.S.C. § 3142(f)(1)(A), -(B), and –(C) – in other

4

words, "crime[s] of violence," "offense[s] for which the maximum sentence is life imprisonment or death," and certain offenses under the Controlled Substances Act. 18 U.S.C. § 3143(a)(2). For defendants who are guilty of offenses in this second category, "[t]he judicial officer shall order that [the] person . . . be detained," unless the officer finds "there is a substantial likelihood that a motion for acquittal or new trial will be granted; or . . . an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and . . . the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2).

In this case, Ms. Bourne does not dispute that her offenses fall in the second category. She pled guilty to four counts of Hobbs Act robbery and one count of conspiracy to commit Hobbs Act robbery, and those offenses are "crimes of violence" for purposes of the Bail Reform Act. *See DiSomma*, 951 F.2d at 496 ("DiSomma's crime of conviction, conspiracy to commit robbery, is a crime of violence because one of its elements is actual or threatened use of force."). She also does not contend that either of 18 U.S.C. § 3143(a)(2)(A)'s circumstances apply, since there is of course no "likelihood that a motion for acquittal or a new trial will be granted" nor any recommendation from the government that "no sentence of imprisonment be imposed upon the person." *See, e.g., U.S. v. Wicker*, No. 3:20-cr-00006 (JAM), 2020 WL 2124522, at *2 (D. Conn. May 5, 2020) (holding that § 3143(a)(2)(A) was not satisfied where the defendant "pled guilty, and the Government has indicated in no uncertain terms that it intends to recommend a sentence of imprisonment be imposed").

A defendant in Ms. Bourne's position may, however, be released if "the conditions of release set forth in § 3143(a)(1) have been met, and . . . 'it is clearly shown that there are exceptional reasons why [her] detention would not be appropriate.'" *U.S. v. Lea*, 360 F.3d 401,

5

403 (2d Cir. 2004) (quoting 18 U.S.C. 3145(c)).  To satisfy the first prong of that test, "the defendant must show, by clear and convincing evidence, that he or she is not likely to flee or pose a danger to the safety of any other person or the community if released under appropriate conditions imposed by the Court."  *U.S. v. McDuffie*, 451 F. Supp. 3d 281, 285 (S.D.N.Y. 2020) (brackets and quotation marks omitted).  Thus, taking the two prongs together, Ms. Bourne's "bail motion can be granted only if there is (1) clear and convincing evidence that [she] is not a flight risk or a danger to others and (2) an exceptional reason why [her] detention is inappropriate."  *Id.* (citing *Lea*, 360 F.3d at 403).

In this case, the conditions set forth in 18 U.S.C. § 3143(a)(1) have been met.  The proposed bond package sufficiently controls Ms. Bourne's risk of flight, since it (a) prevents her from applying for a passport or other travel document, thus preventing her from traveling internationally; (b) places her in the custody of her mother, a New York City Department of Correction officer; (c) places her under the supervision of the United States Probation Office; (d) restricts her travel to New York and Connecticut; and (e) subjects her to home incarceration and location monitoring.  *See, e.g., McDuffie*, 451 F. Supp. 3d at 285 ("There is no serious dispute that Mr. McDuffie is unlikely to flee" because, among other reasons, "any flight attempt would be hampered by his surrendering of travel documents.").  And the Court is satisfied that, under the proposed conditions, Ms. Bourne would not be "likely to . . . pose a danger to the safety of any other person or the community."  Her parents have both agreed to co-sign a $200,000.00 bond securing her compliance with conditions as well as her appearance at trial, and Ms. Bourne understands that if she were to violate any of those conditions, she would be placing her mother's home and her father's livelihood in jeopardy.  Under the circumstances, the Court is persuaded that she would be unlikely to pose a community danger if she were to be released to home

incarceration. *E.g., id.* (holding that "home incarceration . . . with electronic monitoring, under . . . pandemic conditions, adequately reduced the risk of danger that Mr. McDuffie would otherwise pose to others").

The question, therefore, is whether there are "exceptional reasons" to regard Ms. Bourne's detention as inappropriate. 18 U.S.C. § 3145(c). "Exceptional circumstances exist where there is a 'unique combination of circumstances giving rise to situations that are out of the ordinary.'" *Lea*, 360 F.3d at 403 (quoting *DiSomma*, 951 F.2d at 497). "The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'" *Id.* "The Second Circuit has explained that, in determining whether exceptional reasons exist, 'a case by case evaluation is essential,' and a district court's discretion 'is constrained only by the language of the statute: exceptional reasons.'" *U.S. v. McKenzie*, 450 F. Supp. 3d 449, 452 (S.D.N.Y. 2020) (quoting *DiSomma*, 951 F.2d at 497). The defendant bears the burden to demonstrate the existence of "exceptional reasons." *Cf. U.S. v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (discussing burdens with respect to 18 U.S.C. § 3143(b)(1)); *U.S. v. Connelly*, No. 3:16-cr-00125 (MPS), 2018 WL 6309052, at *2 (D. Conn. Dec. 13, 2018) (same).

Although the "exceptional reasons" standard is "somewhat amorphous," "some general rules have nonetheless evolved in the case law." *U.S. v. Lippold*, 175 F. Supp. 2d 537, 540 (S.D.N.Y. 2001). For example, "district courts have found that 'purely personal circumstances' do not constitute exceptional reasons." *U.S. v. Luciano*, 108 F.3d 1370 (table), 1997 WL 120567, at *2 n.1 (2d Cir. Feb. 24, 1997). Put differently, "personal family hardships are very common and occur in a great number of cases," and are therefore not typically regarded as "exceptional." *Lippold*, 175 F. Supp. 2d at 540 (citing *U.S. v. Burnett*, 76 F. Supp. 2d 846, 849 (E.D. Tenn. 1999);

7

*accord U.S. v. Perez*, No. 3:97-cr-00048 (AHN), 1998 WL 386484, at *1 (D. Conn. June 10, 1998) (denying motion for release pending sentencing, in which defendant cited his "learning disability, his mental condition and his need for treatment, the potential custody issues involving his children, and his employment record," because those reasons were "similar in gravity to those presented whenever a defendant's detention is at issue" and, therefore, were not exceptional). The Second Circuit has also observed that "[t]here is nothing 'exceptional' about going to school, being employed, or being a first-time offender, either separately or in combination." *Lea*, 360 F.3d at 403-04. Other courts have held that a defendant's cooperation with the government is not sufficiently "exceptional" to merit pre-sentencing release under Section 3145(c). *E.g., U.S. v. Douglas*, 824 F. Supp. 98, 99 (N.D. Tex. 1993) ("[A]lthough such circumstances are not necessarily present in every case, we cannot say that they are sufficiently exceptional to justify release pending sentence."); *see also U.S. v. Carretero*, No. CR. 98-CR-418 TJM, 1999 WL 1034508, at * (N.D.N.Y. Nov. 4, 1999).

In this case, the circumstances cited by Ms. Bourne are not "exceptional." She cites the strength of the proposed bond and the qualities of her proposed custodians, but neither of these factors is "unique" or "out of the ordinary." *Lea*, 360 F.3d at 403. Many defendants have property to offer as security for bond, and hard-working family members to propose as custodians. Ms. Bourne also cites her Quinnipiac University degree and her additional studies at the University of New Haven, but as noted above, the Second Circuit has held that "[t]here is nothing 'exceptional' about going to school." *Id.* at 403-04. And while the Court notes that she is a first-time offender, the Second Circuit has held that there is nothing exceptional about this factor either. *Id.* In short, she has failed to show that there is anything "unique," "out of the ordinary," or "extraordinary"

about her situation.  By extension, she has not shown that she is entitled to release under Sections 3143 and 3145(c).

### III. Conclusion

Because Ms. Bourne has not met her burden to show "exceptional reasons why [her] detention would not be appropriate," her motion for release pending sentencing is **DENIED**.  At the same time, the Court does acknowledge that the motion was made orally in a then-fast-moving case, and that not all of the potentially "exceptional" circumstances may have been called to its attention.  Its denial is therefore without prejudice to renewal in a written motion that identifies circumstances qualifying as "exceptional" under 18 U.S.C. § 3145(c).

*/s/ Thomas O. Farrish*
Thomas O. Farrish
United States Magistrate Judge